DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Toledo Municipal Housing Court, finding appellants in violation of the village of Ottawa Hills ("the village") property maintenance ordinances. After a four day trial, appellants' premises were judged to possess multiple nuisance conditions, in violation of Ottawa Hills Municipal Ordinance 660.14. Appellants, Abdollah and Nasrin Afjeh, were ordered to abate all nuisance conditions within 21 days. Abatement did not occur. An appeal was filed.
 {¶ 2} The trial court judgment, as well as the municipal ordinance, expressly authorized the village to utilize its own resources to abate all nuisance conditions if appellants failed to comply with the court ordered nuisance abatement. The judgment further explicitly authorized the village to tabulate and assess the costs incurred in abating the nuisance conditions existing at appellants' property. During the pendency of this appeal, the village has not undertaken actions to abate the ongoing nuisance conditions.
 {¶ 3} The trial court further awarded judgment in an amount of $787.50 to the village. This judgment represents the trial court's finding of Civ.R. 11 violations by appellants and imposition of sanctions based upon that finding. Lastly, appellants were ordered to maintain their property in a "nuisance-free condition," or risk a contempt of court finding. For the reasons set forth below, the judgment of the trial court is affirmed.
 {¶ 4} On appeal, appellants set forth the following 19 assignments of error:
 {¶ 5} "I. The trial court erred in failing to dismiss for lack of jurisdiction the same claim between the same parties that have been filed about one year earlier in the Lucas County Court of Common Pleas and was pending at the time of the filing of the claim in this action in the Toledo Municipal Court.
 {¶ 6} "II. The trial court erred in declaring appellants' property a nuisance when evidence and facts of the case do not support that nuisance conditions exited [sic] on the appellants' property.
 {¶ 7} "III. The trial court erred in denying appellant's testimony in his own behalf on direct examination pursuant to Ohio law and the United States Constitution the court was required to present appellant the opportunity to submit testimony and other evidence before a finding of facts could be issued.
 {¶ 8} "IV. The trial court erred to [sic] in awarding appellee $787.50 for sanctions against appellants where the appellant did not file her motion willfully as Civil Rule 11 requires.
 {¶ 9} "V. The trial court erred in awarding appellee $787.50 for sanctions against appellants where the trial court failed to hold a hearing to determine the amount of award.
 {¶ 10} "VI. The trial court erred in awarding appellee $787.50 for sanctions against appellant Dr. Afjeh where appellant Dr. Afjeh was sanctioned for motion he did not file.
 {¶ 11} "VII. The trial court erred in ordering removal of scaffolding where appellee failed to establish the scaffolding exited [sic] on appellants' property at any time during the course of the trial.
 {¶ 12} "VIII. The trial court erred in ordering removal of flag posts on appellants' property where appellee failed to prove the flag poles are prohibited by law.
 {¶ 13} "IX. The trial court erred in ordering removal of weeds on appellants' property where appellee failed to prove the existence of the weeds on appellants' property.
 {¶ 14} "X. The trial court erred to [sic] in ordering removal of drum planters on appellants' property where appellee failed to prove drum planters are prohibited.
 {¶ 15} "XI. The trial court erred in ordering removal of toilet planters on appellants' property where appellee failed to prove that a planter prepared in the shape of toilet bowl is prohibited by law.
 {¶ 16} "XII. The trial court erred in ordering removal of pile of dirt and stone on appellants' property where appellee failed to prove that a pile of dirt or stone which is permitted by the zoning ordinance is prohibited by law.
 {¶ 17} "XIII. The trial court erred in ordering removal of unsightly material on appellants' property where the court order is vague in that it failed to state what constitutes unsightly material.
 {¶ 18} "XIV. The trial court erred in ordering appellants to maintain their property in a nuisance free condition where the court order is undefined in that it failed to state what specific actions or materials constitutes a nuisance.
 {¶ 19} "XV. The trial court erred in finding that `Dr. Afjeh acknowledged that the toilet was on the property, but denied telling Marc Thompson that he would remove these items if he is provided law stating that they were illegal.'
 {¶ 20} "XVI. The trial court erred in denying appellant Nasrin Afjeh's expert witness to testify in violation of her rights guaranteed by the Article I Section 10 of the Ohio Constitution to present a witness on her behalf.
 {¶ 21} "XVII. The trial court erred in denying appellant Nasrin Afjeh's counterclaim where appellant showed her due process rights were violated when appellee revoked her lawful fence permit.
 {¶ 22} "XVIII. The trial court erred in rejecting appellants' assertion that the village ordinance is unconstitutionally vague in violation of the Due Process and Equal Protection clauses of the United States and Ohio Constitutions.
 {¶ 23} "XIX. The trial court erred in issuing, without statement of reasons, a protective order to disallow witnesses called to testify by appellants."
 {¶ 24} The following undisputed facts are relevant to the issues raised on appeal. This case is but the latest chapter in a widely known, acrimonious battle between appellants, a married couple, and the village in which they have resided for many years.
 {¶ 25} Appellants' obsessive distaste of the village government and insatiable appetite for battling with them is legendary in the community. Appellants various litigious entanglements with the village have spanned many years. This case cannot be examined in a vacuum given its history. In order to be accurately understood, this must be viewed in its full and complete context.
 {¶ 26} Appellants' property is specifically situated overlooking a scenic natural setting in the village commonly referred to as "the meadow." The meadow consists of acreage adjacent to the Ottawa River. The ultimate irony of this contentious case is its origins in such a peaceful setting.
 {¶ 27} Appellants have engaged in aggressive, lengthy, and widely known battles with the village for many years. Appellants profess an obsessive, legally unsupported belief that they have been subjected to a multitude of actionable wrongs over the years. These perceived wrongs are believed to have been perpetrated by village officials and employees. Appellants' overwhelming distrust and hostility towards the village permeates the record in this case.
 {¶ 28} The record clearly shows appellants are highly intelligent. The record shows they are educated, professional people. Abdollah Afjeh ("Abdollah") is head of the mechanical engineering department at the University of Toledo. Nasrin Afjeh's ("Nasrin") intelligence can be unequivocally discerned from the record. Her representation was aggressive, creative, and determined.
 {¶ 29} It is painfully clear throughout the record that appellants deeply believe they have been subjected to repeated persecution at the hands of the village. It is clear from the record that appellants harbor negative feelings and perceptions towards the village stemming from this perceived pattern of persecution.
 {¶ 30} During their protracted feud with the village, appellants have elected to repeatedly express their feelings toward the village in an unlawful manner. Appellants once painted graffiti in bright lettering on the garage door of their own home. The graffiti stated, "Welcome to Ottawa Hell."
 {¶ 31} In a separate filing, the village successfully challenged appellants on that property code violation. Appellants were ordered to paint over the graffiti. In a defiant response, appellants selected an extremely bright, visually troublesome color to paint their garage door. Due to the manner in which appellants repainted the graffiti, the village took the matter back to court. Appellants were again ordered to repaint the garage door. Appellants ultimately painted their garage door black.
 {¶ 32} Appellants' escalating displeasure at the village over its property maintenance code manifested itself again. In the wake of being ordered to properly paint their garage door, appellants carefully selected and placed certain controversial objects upon their property in public view. Given appellants' history with the village, their intent in exhibiting these objects is questionable. It is these more recent exterior nuisance conditions which are the subject of this case.
 {¶ 33} After being ordered to paint over the graffiti on their garage door, appellants erected two tall wooden poles close to Bancroft Street and mounted a crudely painted sign with the same graffiti message they had been court ordered to paint over on the garage door. The sign reads "Welcome to Ottawa Hell, still got kakistocracy."
 {¶ 34} In addition, appellants created a multitude of other outlandish and highly visible property conditions. Appellants placed an old toilet in their front yard. Appellants placed multiple steel drums in their front yard. Appellants inserted an array of wood posts throughout their property. Lastly, appellants placed several mounds of dirt and stone on their property.
 {¶ 35} The record shows that appellants assert the toilet is a flower pot, the steel drums are landscaping planters, the piles of dirt and debris are either an artistic sculpture representative of "female power" and/or intended for landscape use, and the disordered array of wood posts are actually flag poles.
 {¶ 36} The defiant nature of appellants' intentions is demonstrated by these property actions, and had a detrimental impact on neighbors' enjoyment of surrounding premises.
 {¶ 37} Following appellants' creation and installation of these property conditions, the village was inundated with complaints. The village investigated and documented the conditions. It concluded that multiple property nuisance conditions in violation of village ordinances existed. The village engaged in an attempt at securing voluntary cooperation from the appellants in remediating the property nuisance conditions.
 {¶ 38} Efforts to elicit voluntary cooperation from appellants were futile. Accordingly, the village had no alternative but to file a nuisance compliant against appellants on November 4, 2002. The village filed an amended complaint on February 21, 2003. Appellants filed an answer on March 21, 2003.
 {¶ 39} The record reveals that the trial court docket of activity in this matter exceeds 25 pages in length. Review of the docket reveals it is replete with various motions, continuances, and pleadings. The bulk were filed by appellants or were responses to actions taken by appellants.
 {¶ 40} A pretrial hearing was conducted on October 6, 2003. Nasrin motioned the court for permission to utilize her personal recording equipment to make private recordings of all court proceedings. In support of her motion, appellant proclaimed, "I'm sorry if I appear so suspicious, but I have prior experiences in court and that have left me sad and worried. And I think that I will not get a fair shake." Her motion was denied.
 {¶ 41} Appellant's outrage at the court's decision led to one of many irrelevant speeches. Appellant proclaimed, "I cannot pay. Why should I pay for something that I could manage by audiotape? * * * Why should I have to be forced to pay for that? That's not fair to me."
 {¶ 42} Ironically, given this was a preliminary pretrial, appellant then requested an appeal. Appellant proclaimed, "I would like to appeal this portion to the appeals court." The trial court judge correctly advised her it would be unlikely that his order on her motion to make her own recordings would be deemed a final and appealable order.
 {¶ 43} The type of exchange reflected in the transcript of the October 6, 2003 pretrial hearing exemplifies the type of persistent and baseless objections, motions, and claims those involved were subjected to by appellants during this protracted case.
 {¶ 44} The matter finally proceeded to trial on December 15, 2003. The record shows that Nasrin did not prevail in several preliminary procedural matters. In response, she did not want the trial to proceed. She persisted in baseless and protracted arguments with the trial court.
 {¶ 45} Nasrin proclaimed, "Your Honor, I can't proceed. I am ill. I have taken medication. I can't focus." The trial court stated, "If you wish to leave, you may do that, but this trial is going forward."
 {¶ 46} The village's first witness, Dr. Izsak ("Izsak"), resides immediately next door to appellants. Nasrin engaged in a lengthy cross examination of Izsak. She engaged in a multitude of improper antics during this cross examination.
 {¶ 47} Nasrin placed herself so as to purposely block Izsak's view of certain people in the courtroom whom she did not want him to see. The court had to order her to reposition herself in an unobtrusive fashion. She improperly and voraciously attempted to elicit testimony from Izsak regarding his Jewish religious affiliation. The court properly denied that line of questioning and stated, "His religion is not at issue. Next question." She launched wholly unsupported accusations against Izsak of reporting her to the FBI. She repeatedly accused the witness of lying. For example, she stated, "Well, that is my question. Why did you lie?" Yet again, the village's objection was sustained due to appellant's repeated badgering of the witness. None of her claims or allegations was rooted in factual, relevant evidence.
 {¶ 48} The record shows that appellants' cross examination of Izsak consisted of irrelevant speeches, posturing, and antics designed to evoke sympathy. For example, during Izsak's cross examination, she proclaimed, "Your Honor, he gets anything he wants from the village because they hate me; they want to throw me out. So he comes here and sits down and testifies against me." Such claims do not constitute evidence.
 {¶ 49} The progress of the trial was tortuously slow, necessitating bifurcation. The trial resumed on January 20, 2004. Village Manager Marc Thompson's ("Thompson") testimony was heard on January 20, 2004. Thompson testified that his communications with appellants regarding the nuisance conditions proved counterproductive. It resulted in their implementation of additional nuisance conditions.
 {¶ 50} At one point, counsel for the village asked, "As village manager, did you observe, how would you describe the condition of the Afjeh property after your June 5 letter was delivered to the Afjehs?" Thompson responded, "I believe the property got worse and had additional violations of our ordinance."
 {¶ 51} Thompson later relayed to the court an unsettling experience he suffered when attempting to perform his job duties at appellants' premises. Thompson went to the property to measure the new "Ottawa Hell" sign appellants erected in their front yard. Thompson testified, "I attempted to measure the sign * * * And Mrs. Afjeh came, I would characterize it as running and screaming, and sort of put herself between me and the sign and prohibited me from measuring." Due to Nasrin's total lack of cooperation and physical hostility towards Thompson, he left the premises.
 {¶ 52} Thompson later returned with a digital camera to document the sign. During her lengthy cross examination of Thompson, Nasrin accused him of furtively attempting to "film her property" on the day he took digital photographs of the sign. She stated, "Isn't it true that when you saw me and when you were in my property and filming then you came and tried to pretend like you were measuring?" Such claims do not constitute evidence.
 {¶ 53} Appellants' cross examination of village manager Thompson consumed the rest of the day. The trial resumed on February 27, 2004. The transcript of the February 27, 2004 testimony shows similar lengthy speeches, diatribes, and irrelevant banter by appellants. None of these constitute evidence. All claims by appellants that they have been denied their "day in court" is a gross misrepresentation of the record.
 {¶ 54} During her cross examination of zoning commission member Catherine O'Connell ("O'Connell"), appellant asked questions such as, "Do you hate me?" Appellant's improper remarks to the judge were statements such as, "Object that the judge has already made up his mind." Such inappropriate statements permeate the transcript.
 {¶ 55} The record is replete with examples of appellants' filing baseless motions, making baseless objections, making baseless accusations, and requesting numerous continuances. The trial court's generous indulgence of appellants' behavior finally came to an end.
 {¶ 56} Appellants had previously filed a motion to dismiss. It was denied. Appellants filed a motion for a statement of findings of fact and conclusions of law regarding the denial of their motion to dismiss. The trial court had previously denied defendants' motion for findings of fact and conclusions of law on the request to make personal recordings.
 {¶ 57} The trial court denied defendants' motion for findings of fact and conclusions of law regarding its earlier denial of appellant's motion to dismiss. The trial court correctly stated, "Pursuant to Ohio Civil Rule 52, the court is not required upon motions to issue findings of fact and conclusions of law if those motions are not final and appealable orders."
 {¶ 58} Civ.R. 22 requires all pleadings, motions and documents filed with the court be done so by the filing party with "good ground to support it." It further requires filings not be "interposed for delay." The record shows appellants made many such filings.
 {¶ 59} The trial court summarized appellants' improper conduct as, "It is further the order of the court that the defendant has continually filed motions for the purpose of delay and confusion. And defendant is hereby ordered not to file any further motions or pleadings unless same is consistent with the rules established by the Ohio Civil Rules. It is further the order of the court that the interrogatories filed by the defendant is the continuation of her pattern of delay and harassment and the plaintiff is hereby not required to answer such interrogatories. This order is based upon the fact that trial was commenced on December 15 and has been continued for a new trial date and to allow the defendant to interpose interrogatories after the commencement of the trial would be an express violation of established civil rules. Whereby pursuant to Civ.R. 11, defendant is hereby ordered to pay the expenses and attorney fees for the plaintiff as she has continually pursued motions and discovery which she is not entitled to."
 {¶ 60} Appellants clearly and mistakenly believe their passionate personal opinions about the village and its officials comprise evidence in support of a valid legal defense. During her cross examination of the zoning commission member Jack Straub ("Straub"), appellant asked such questions as, "Isn't it true that you love to give trouble to me and to make my life very difficult in the village." Such unsupported claims are not evidence.
 {¶ 61} This disrespectful behavior towards witnesses, the judge, the other party, and the legal process itself finally culminated in a severe admonition by the trial judge. The trial court stated in relevant part, "You know, we always end oursessions this way and it's just such a tragedy. I just wish youhad some semblance of procedure and decorum and respect for thecourt and you have absolutely none of that and it's just veryunfortunate."
 {¶ 62} The trial concluded and the case became decisional. On September 29, 2004, the trial court issued its judgment. Appellants' property conditions were found to be in violation of Ottawa Hills Ordinance 660.14.
 {¶ 63} Judgment was awarded on the previously granted Rule 11 sanctions in an amount of $787.50. The steel drums, toilet, dirt piles, poles, weeds, and any and all unsightly material were ordered removed within 21 days. Failure to do so would result in authorization to the village of Ottawa Hills to utilize its own resources to abate the nuisance conditions and assess the costs against the premises. Lastly, appellants were ordered to maintain their property in nuisance free condition or risk a contempt of court finding. The judgment was appealed.
 {¶ 64} Appellants have set forth 19 separate assignments of error. We have thoroughly reviewed each assignment. As a starting point, we must address a group comprised of nine of the 19 assignments. Assignments 5, 6, 7, 11, 13, 14, 15, 16, and 19 are rooted entirely in appellants' irrelevant, nonlegal opinion.
 {¶ 65} App.R. 16(A)(7) sets forth certain mandatory prerequisites which must be in the record for an assignment of error to properly be under consideration by an appellate court. App.R. 16(A)(7) states, "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons and support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." In layman's terms, an appellant, whether represented or pro se, must accompany each assignment of error with a legal argument rooted in citation to legal authority, whether statutory or caselaw.
 {¶ 66} Controlling case law establishes an appellate court need not consider assignments of error presented in violation of App.R. 16(A)(7). The legal analysis set forth in the case ofCapital One Bank v. Branch, 3rd Dist. No. 05-AP-441,2005-Ohio-5994, exemplifies this principle limiting the parameters of appellate review. The Capital One Bank court held in relevant part:
 {¶ 67} "An appellate court may disregard an assignment of error pursuant to App.R. 12(A)(2) if an appellant fails to cite any legal authority in support of an argument as required by App.R. 16(A)(7). * * * Further, appellants' arguments are extremely imprecise. This court is not required to conjure up questions never squarely asked or construct full blown claims from convoluted reasoning." Citing State ex rel. Karmasu v.Tate (1992), 83 Ohio App.3d 199, 306.
 {¶ 68} This principle delineating the limits and scope of appellate review has consistently been acknowledged by this court. Blood v. Hartland Twnshp., 6th Dist. No. H-04-032,2005-Ohio-3860, at ¶ 31. The record shows appellants' Assignments of Error Nos. 5, 6, 7, 11, 13, 14, 15, 16, and 19 are textbook examples of unsupported assignments not subject to our review.
 {¶ 69} These assignments are accompanied by no legal authority. They are accompanied solely by appellants' unsupported speeches and opinions. None of it constitutes legal authority or evidence. As such, based upon both App.R. 16(A)(7) and controlling case law, we need not consider these assignments. We need not attempt to construct properly presented assignments of error from appellants' "convoluted reasoning." These assignments of error are not well-taken.
 {¶ 70} We will now address appellants' remaining assignments of error in the order in which they are presented in their brief.
 {¶ 71} In their first assignment of error, appellants' claim the trial court lacked jurisdiction in this case. In support, appellants argue that a previous case involving their property filed in the Lucas County Court of Common Pleas on November 6, 2001 precluded jurisdiction of the Toledo Municipal Court in this matter. Our review of the record reveals that appellants' interpretation that these matters were substantively identical, and could not be separately litigated, is false and a mischaracterization of the cases.
 {¶ 72} The case filed in the common pleas court was a declaratory judgment action filed as a result of the "Ottawa Hell" graffiti previously painted on appellants' garage door. The village sign ordinance was declared constitutional. This court affirmed the decision.
 {¶ 73} Separate and apart from the garage door graffiti and constitutionality of the sign ordinance issue, this case stems from items placed by appellants in their front yard. The items include a toilet, steel drums, dirt piles, and wood poles. Their presence was found to be in violation of Ottawa Hills Ordinance 660.14.
 {¶ 74} Ottawa Hills Ordinance 660.14(v), statutorily vests appellee with the authority to have this case heard in the Toledo Municipal Housing Court and concurrently vests the Toledo Municipal Housing Court with the statutory authority to hear Ottawa Hills property nuisance cases. The statute states, "the village may petition the Toledo Municipal Housing Division Court or any other of competent jurisdiction to order the property owner on which a public nuisance is found to: (1) abate the nuisance" The trial court possessed statutory authority to hear this case.
 {¶ 75} Whether the trial court had jurisdiction in this case is a question of law. On appeal, questions of law are reviewed de novo. Avent v. Avent, 6th Dist. No. L-05-1140, Wiltberger v.Davis (1996), 110 Ohio App.3d 46.
 {¶ 76} This case stems from separate and distinct causes of action in comparison with the common pleas case. The trial court did not err in exercising its express, statutory jurisdiction. Appellants' first assignment of error is not well-taken.
 {¶ 77} In appellants' second assignment of error, they claimed the trial court erred in declaring their property a nuisance. In support, appellants argue that there is no evidence in support of finding nuisance conditions exist on their property. Appellants maintain there was insufficient evidence in support of a nuisance judgment. Accordingly, we will review this assignment pursuant to a sufficiency of the evidence standard of review.
 {¶ 78} Applying the "sufficiency of the evidence" standard of appellate review, we must determine whether the evidence submitted was legally sufficient to support the elements of the offense. State v. Hill, 6th Dist. No. OT-04-035,2005-Ohio-5028, at ¶ 5. Specifically, the trial court found that certain conditions existing at appellants' premises violate ordinance 660.14. These conditions included; the placement of a toilet in the front yard, the placement of steel drums in the front yard, the ongoing presence of piles of dirt and stones, and the haphazard placement of wood poles around the property.
 {¶ 79} Ottawa Hills Ordinance No. 2002-15, section 660.14 establishes that Ottawa Hills property owners must, "keep all yards or lots free from unsightly materials not appropriate to the area and debris which may cause a fire hazard or may act as a breeding place or vermin or insects. Unsightly materials not appropriate to the area shall include but not be limited to
inoperable or unlicensed motor vehicles including motorized bicycles and motorcycles, motor vehicle parts, construction materials, brush piles, miscellaneous debris, out of use appliances, inoperable or unlicensed boats or watercraft, snowmobiles, recreational vehicles, or trailers, piles or stacks of kindling wood or similar combustible materials larger than three cords." (Emphasis added). The statute goes on to define "public nuisance" as any condition which constitutes a violation of the above quoted section. See 660.14(e)(ii)(4).
 {¶ 80} The record indisputably shows appellee furnished factual evidence that appellants willfully put an old toilet, steel drums, dirt piles, and miscellaneous wood poles throughout their property. Ample evidence, via testimony, photographs, and other documentation, verify the existence of these public nuisance conditions on appellants' premises.
 {¶ 81} While appellants go to great lengths, without legal or factual support, to falsely label these items as things such as flower pots, landscape planters, or female power sculptures, there is absolutely no factual, relevant evidence in support of these frivolous and baseless claims. The placement of thesematerials on their premises, and their refusal to remove same,squarely put appellants in violation of Ordinance 660.14.
 {¶ 82} Appellants admitted no exhibits into evidence. This court's judgment of August 10, 2005, states in relevant part, "the court's May 18, 2005 decision ordering the parties to provide copies of the exhibits in question is vacated since appellee has demonstrated that the exhibits were never part of the trial court record for consideration. Appellants' motions to supplement the record and to file an App.R. 9(C) statement of evidence are found not well-taken and denied."
 {¶ 83} Appellants filed a motion for reconsideration of that decision. It was denied. Appellants persisted in filing additional motions and requests for continuances, culminating in an additional judgment of this court. This court stated in its judgment of October 18, 2005 "appellants filed a reconsideration of the decision and it was denied on August 22, 2005 and appellants were granted 30 days to file their brief. On September 21, appellants were again granted a 31 day extension to file their brief which is now due on October 21, 2005. The court has been patient with appellants continuing attempt to make these exhibits part of the appellee record and to request further extensions to file their brief. The notice of appeal was filed on October 12, 2004, and more than a year later, appellants have not filed their brief. However, it is time to proceed."
 {¶ 84} None of appellants' proposed exhibits are properly before this court for review. We cannot address the relevancy, if any, of the proposed exhibits. Conversely, we have ample evidence admitted by appellee establishing appellants' violations of Ordinance 660.14. There is ample, competent, compelling evidence in support of the trial court's nuisance judgment. Appellants' second assignment of error is not well-taken.
 {¶ 85} In their third assignment of error, appellants claim the trial court erred in allegedly denying Abdollah the opportunity to provide testimony on direct examination. Any allegation that either of the defendants was denied sufficient opportunity to express their view points to the trial court is wholly frivolous and without foundation. The voluminous trial court record contains, literally, hundreds of pages of testimony by both appellants. Appellants expressed their views in open court on each and every aspect of this case at great length.
 {¶ 86} All attempts by appellants to defend themselves by diverting attention to other properties are irrelevant, and will be disregarded by this court. Appellants provide no relevant or compelling evidence that the judge's denial of additional testimony by Abdollah was unreasonable, arbitrary, or unconscionable. There was no abuse of discretion. Appellants' third assignment of error is not well-taken.
 {¶ 87} In their fourth assignment of error, appellants claim the trial court erred in awarding Civ.R. 11 sanctions to appellee. Civ.R. 11 mandates that parties, whether represented or pro se, possess "good ground" in support of their pleadings, motions, and filings with the court. It further mandates no filings be submitted "for delay."
 {¶ 88} As this court has consistently affirmed, we review trial court Civ.R. 11 decisions pursuant to an abuse of discretion standard. Kreger v. Spetka, 6th Dist. No. L0-5-1029,2005-Ohio-3868, at ¶ 11. An abuse of discretion finding demands more than a simple error in law or judgment; it implies an unreasonable, arbitrary or unconscionable attitude by the trial court in its decision. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 89} Objective review of the record reveals appellants' consistent pattern of improper conduct including; voluminous baseless objections, motions, and allegations. Ironically, appellants simultaneously sought special dispensation from the court in the form of many continuances and guidance.
 {¶ 90} The trial court accurately held, "the defendant has continually filed motions for the purpose of delay and confusion." There is no evidence this conclusion was unreasonable or arbitrary. There was no abuse of discretion in the award of Civ.R. 11 sanctions. Appellants' fourth assignment of error is not well-taken.
 {¶ 91} Our review of the substantive nature of appellants' eighth, ninth, and tenth assignments of error establishes that these assignments all stem from the same issue and will, therefore, be addressed concurrently. In these assignments of error, appellants challenge the legal authority and ability of the trial court to order removal of their wood poles, weeds, and steel drums.
 {¶ 92} Each of these assignments possesses a common thread. Each assignment presumes the disputed property conditions were not shown to constitute a "nuisance" in violation of Ordinance 660.14. As we determined in response to assignment of error two, appellee furnished ample, compelling, and uncontroverted evidence that nuisance conditions exist at appellants' property. Appellee presented supporting evidence in the form of photographs, documentation, and the testimony of firsthand observers of the conditions.
 {¶ 93} We find the testimony of longtime next door neighbor Izsak particularly compelling. Izsak vividly described the nuisance conditions he has observed while living next to appellants. He stated, "I believe that a well maintained home doesn't have a pile of dirt that's been there for two years that has weeds growing on it. I believe a well maintained home doesn't have a pile of stones that have been there for two years with no actual purpose in mind. I believe a well maintained home doesn't contain plumbing toilet articles, I believe, in their front yard. I believe a well maintained home does not contain 50 to 55 gallon drums in their yard. I believe a well maintained home does not have signs painted on their garage. I believe a well maintained home does not have signs on ten foot poles in the front of their yard. I believe a well maintained home does not have a row of dead shrubs in the front and or side that have been there for a very long time. In my opinion, those things do not count as a well maintained home or yard."
 {¶ 94} Not only do the above described conditions not comprise a "well maintained home" in layman's terms, they also unequivocally comprise violations of Ordinance 660.14. As such, the trial court correctly found all of these conditions to be unlawful nuisance conditions on appellants' premises.
 {¶ 95} These nuisance findings trigger the trial court's legal authority to order abatement of these conditions pursuant to Ordinance 660.14(v)(1). The trial court's actions challenged by appellants' eighth, ninth, and tenth assignments of error are statutorily permitted based on the trial court's nuisance findings.
 {¶ 96} There was ample, competent, and compelling evidence in support of the trial court's findings. As such, the judge was empowered to order abatement of the nuisance. Such an order is not an abuse of discretion. On the contrary, it is the duty of the court to order abatement upon a nuisance finding.
 {¶ 97} The record shows that the findings are not against the manifest weight of the evidence, and do not constitute an abuse of discretion. Appellants' eighth, ninth, and tenth assignments of error are found not well-taken.
 {¶ 98} In their twelfth assignment of error, appellants similarly argue the trial court erred in ordering abatement of their weed covered dirt and stone piles. Based upon the same legal analysis and findings set forth in response to appellants' eighth, ninth, and tenth assignments of error, appellants' identically reasoned twelfth assignment of error is found not well-taken.
 {¶ 99} In appellants' seventeenth assignment of error, appellants argue the trial court erred in denying their counterclaim alleging appellee violated constitutional due process rights in revoking a previously granted fence permit. The fence permit dispute was the subject of lengthy and extensive testimony before the trial court.
 {¶ 100} The record demonstrates appellants had been issued a permit to construct a chain link fence on the eastern and western boundaries of their property on November 15, 1999, and February 8, 2000, respectively. No fence was ever constructed. Appellants failed to avail themselves of these permits. In the interim, appellants engaged in a multitude of property code violations which generated the case under review.
 {¶ 101} In November, 2002, appellants requested a separate variance to erect a fence "encapsulating" their property. Zoning commission member Straub moved to table this request and then moved to revoke the outstanding permits issued to appellants but not acted upon.
 {¶ 102} Nasrin was present at this zoning commission meeting, given an opportunity to speak, and declined to speak. The motion passed unanimously.
 {¶ 103} The trial court had evidence that appellants had a fence permit for two years which they elected not to utilize. The trial court had evidence that Nasrin was present at the zoning commission meeting in which revocation of the old permit was discussed. Nasrin did not make any statement, objection, or argument against the revocation.
 {¶ 104} Allegations that appellants' constitutional rights have been compromised under these circumstances are wholly without merit. There is no relevant, factual evidence that the trial court's denial of appellants' counterclaim based upon the fence permit issue was an abuse of discretion. Appellants' seventeenth assignment of error is not well-taken.
 {¶ 105} In their eighteenth assignment of error, appellants argue the trial court erred in finding Ordinance 660.14 constitutionally valid. In support, appellants argue that the ordinance has resulted in "unequal and discriminatory enforcement" of the ordinance at the expense of appellants. Appellants admitted no exhibits into evidence. There is no evidence in the record in support of this unsubstantiated allegation.
 {¶ 106} This court has previously reviewed this same ordinance and upheld its validity. Ottawa Hills v. Swan, 6th Dist. No. L-01-1360, 2002-Ohio-2639. Appellants' eighteenth assignment of error is not well-taken.
 {¶ 107} We have thoroughly reviewed and considered the voluminous record in this matter. While the record possesses a wealth of irrelevant "convoluted reasoning" by appellants, there are various certitudes evident from the record. Appellants mistakenly believe they can transform property code violations into lawful acts by mislabeling of nuisance materials and unsupported claims of improper motives by the village.
 {¶ 108} This case is about the valid legal authority of a municipal government to regulate how property owners maintain their premises. This case is about appellants' numerous violations of these ordinances. Appellants have no one but themselves to blame for their legal entanglements with the village.
 {¶ 109} Each of appellants' nineteen assignments of error is found not well-taken. The trial court judgment is affirmed in its entirety. Appellee is authorized to abate all nuisance conditions on the property immediately. Appellee is authorized to remove all wood poles, stone piles, dirt piles, toilets, steel drums, and any other nuisance material at 3616 West Bancroft Street, Toledo, Ohio. As also ordered by the trial court, all expenses incurred in abating these nuisance conditions can be assessed against the property.
 {¶ 110} On consideration whereof, this court finds appellants were not prejudiced, justice was done, and the judgment of the Toledo Municipal Court is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Parish, J. concur.
Arlene Singer, P.J., concurs in judgment only, in part, and dissents, in part.