JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Robert Keating (Robert), appeals the trial court's decision regarding the term of the parties' marriage, support, separate property interests, division of property, and attorney's fees. Finding no merit to this appeal, we affirm.
 {¶ 2} The proposed journal entry of divorce was submitted to the trial court by plaintiff-appellee's, Betty Keating (Betty), counsel on August 31, 2007. Robert filed objections to the proposed judgment entry on September 14, 2007. On October 1, 2007, the trial court issued the judgment entry of divorce to which Robert timely filed his notice of appeal.
 {¶ 3} The following facts are relevant to the issues raised in this appeal. Robert and Betty were married on June 16, 1995. Three children were born of the marriage.
 {¶ 4} During their marriage Robert and Betty accumulated a marital estate which included a marital home (6495 Olde York Road, Parma Heights, Ohio), Robert's medical practice, and other acquired marital assets. Issues regarding distribution of these marital assets are raised in a number of assignments of error in this appeal.
 {¶ 5} Each party claimed a separate property interest in the down payment on the marital residence on Olde York Road. Before the parties' marriage, Betty owned a home at 9800 Manorford Drive, Parma Heights, Ohio, which had been *Page 4 
awarded to her as a part of her first divorce. Robert moved into this home with Betty when they became engaged in January of 1995. In September of 1995, the newly wedded couple purchased the property on Olde York Road (marital residence), with a down payment of $30,000.
 {¶ 6} A portion of the down payment of the marital residence was derived from a second mortgage in the amount of $16,361 taken out on Betty's Manorford Road property. The approximate balance of the down payment on the marital residence in the amount of $12,000 was paid by check drawn on a First Nationwide Bank account on September 16, 1995.
 {¶ 7} Robert was a practicing physician during the entire time the parties lived together and during the entire course of their marriage. According to his testimony, in 1995, he was either with the Paragon Medical Group or the Fairview Medical Group.
 {¶ 8} The parties' three children were born within the first three and a half years of their marriage. Robert and Betty agreed that Betty would remain out of the workforce in order to care for the children. She did not return to outside employment until 2000, when she took a part-time job at Deaconess Hospital.
 {¶ 9} Robert opened his medical office in Middleburg Heights in January of 2001. In March of 2001, Betty started working as the bookkeeper for Robert's practice. Betty was never paid a salary on a regular basis; however, at the end of *Page 5 
the year 2001, Robert's business accountant determined it would make sense for tax purposes to shift $30,000 of income to Betty as salary, and she was given a W-2 form showing that amount in the years 2001 and 2002.
 {¶ 10} Robert worked for other practice groups until 2001, when he commenced his sole private practice as Robert J. Keating, M.D., Inc. In May of 2001, Robert became a one-sixth owner of the business known as Bagley-Oak Professional Properties Company (Bagley-Oak), an entity which owns the commercial property at 18820 Bagley Road, Middleburg Heights, in which Robert's medical office is located. Robert has one of the six suites in the building. Robert purchased this interest from Dr. L. Rao in May of 2001 for $275,000. He obtained the money from Dollar Bank as a loan in the amount of $100,00, and a loan from Dr. Rao for $175,000.
 {¶ 11} In November 2002, conflict and hostility between the parties came to a head when Robert discharged Betty as the bookkeeper for his medical practice and barred her from coming to the office. Their financial relationship disintegrated when each party took steps in their individual interests with regard to their credit cards and joint accounts.
 {¶ 12} Betty filed a complaint for legal separation on March 6, 2003, and the parties separated on March 23, 2003, when Robert moved to a new residence. Robert purchased a home at 16075 Bagley Road, Middleburg Heights, Ohio on *Page 6 
March 28, 2003. As this home did not meet the children's needs, Robert purchased another home at 13729 Arrowhead Trail, Middleburg Heights, which the court found to be his separate property.
 {¶ 13} When the youngest child entered first grade in 2005, Betty obtained a part-time job as a cafeteria worker for the Parma City Schools. At the conclusion of the trial, in January 2006, she had been offered a permanent position with medical coverage.
 {¶ 14} Betty did not receive any funds from Robert between March 6, 2003 and July 17, 2003, the date of the first temporary support payment. The temporary support order granted on June 16, 2003, ordered spousal support in the amount of $4,300 per month, and child support in the amount of $1,464.90 per month.
 {¶ 15} The temporary support order continued in effect until the judgment entry of divorce on October 1, 2007, which required Robert to pay spousal support for 18 months in the amount of $3,500 from October 1, 2007 through March 2009. The judgment entry of divorce adopted the magistrate's recommendation that the "duration of the marriage," for purposes of marital property distribution, was between the date of marriage, June 19, 1995, through the first date of the final hearing, June 29, 2005.
 {¶ 16} The trial court's determinations regarding Robert's income and business income as a medical professional are not the subject of the instant appeal. *Page 7 
Robert questions the determinations of the trial court with regard to Betty's income in a limited fashion. He generally argued that the trial court's determination as to Betty's income was in error because of misstatements by Betty as to income earned babysitting and with regard to the years 2001 and 2002, when she received a $30,000 annual salary working at Robert's medical practice. The magistrate explained in detail the credibility determinations and statutory factors that went into the trial court's decision to impute $25,000 in income to Betty for purposes of child support, and in not imputing the same income amount in its determination with regard to spousal support.
 {¶ 17} Robert appeals a number of determinations in the final divorce decree, raising nine assignments of error, all entailing the same standard of review. Appellate review of a trial court's judgment in a divorce action is under an abuse of discretion standard. Holcomb v.Holcomb (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597. Abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d1140.
 {¶ 18} ASSIGNMENT OF ERROR ONE
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DETERMINATION OF THE TERM OF THE PARTIES' MARRIAGE." *Page 8 
 {¶ 19} In his first assignment of error, Robert contends that the trial court erred by declining to adopt March 6, 2003, the filing date of Betty's complaint for separation, as the de facto termination of marriage date. The trial court in its final decree adopted the date set forth in the magistrate's May 23, 2006 decision, that being, June 29, 2005, the first day of final hearing.
 {¶ 20} Robert claimed throughout the proceedings that the marriage terminated on March 6, 2003. Betty argued that the trial court, within its discretion granted to it by the legislature pursuant to R.C. 3105.171(A)(2) (b), properly selected the first date of final hearing.
 {¶ 21} R.C. 3105.171(A)(2) defines "during the marriage"as follows:
 "(2) `During the marriage' means whichever of the following is applicable:
 (a)Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 (b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, `during the marriage' *Page 9 means the period of time between those dates selected and specified by the court."
 {¶ 22} Robert argues that the use of the first date of trial as the termination date was against the evidence submitted at trial. He contends that their separation in March 2003 was a mutual decision, accepted and acknowledged by both at that time; and, that upon their separation, the parties established separate financial accounts and terminated their joint accounts. He further argues that the date selected by the trial court improperly added approximately 29 months to the term of the marriage.
 {¶ 23} In Abernethy v. Abernethy, Cuyahoga App. No. 80406, 2002-Ohio-4193, this court recognized the latitude given to trial courts with respect to the selection of a de facto date under R.C. 3105.171(A)(2)(b). In acknowledging the discretion given to the trial court in choosing a more equitable date than the separation date, where one spouse remained financially dependent upon the other throughout the separation, it was stated:
 "In order to achieve an equitable distribution of property, the trial court must be allowed to use alternative valuation dates where reasonable under the particular facts and circumstances of the case. `The determination as to when to apply a valuation date other than the actual date of divorce is within the discretion of the trial court and cannot be disturbed on appeal absent a demonstration of an abuse of discretion.'" (Internal citations omitted.) Id. at ¶ 19, quoting Gullia v. Gullia (1994), 93 Ohio App.3d 653. *Page 10 
 {¶ 24} The record in this case presents just such a situation. Robert had complete control of the family resources after the separation. Once Betty was discharged by Robert as the bookkeeper for his medical practice in November 2002, she was not employed outside the home and was completely dependent upon Robert for child and spousal support, which commenced in July 2003.
 {¶ 25} In Cangemi v. Cangemi, Cuyahoga App. No. 86670, 2006-Ohio-2879, this court stated:
 "`The decision to use the final hearing date as the valuation date or another alternative date pursuant to R.C. 3105.171(A)(2)(a) and (b) is discretionary and will not be reversed on appeal absent an abuse of discretion.' Schneider v. Schneider (1996), 110 Ohio App.3d 487, 493, * * *. A trial court may use a de facto termination date when such a date would be equitable. Berish v. Berish (1982), 69 Ohio St.2d 318, 320, * * *. Otherwise, it is presumed the date of the final divorce hearing is the appropriate termination date of the marriage." Id. at ¶ 23.
 {¶ 26} Given the facts of this case, we do not find that the trial court abused its discretion in adopting the magistrate's decision that stated "the duration of the marriage is June 16, 1995 until June 29, 2005." We agree that Robert failed to *Page 11 
meet his burden to show that utilization of the presumptive date for the termination of the marriage, June 29, 2005, would be inequitable in the case sub judice. We overrule the first assignment of error.
 {¶ 27} ASSIGNMENT OF ERROR TWO
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY IMPROPERLY DETERMINING THE ISSUES OF TEMPORARY SUPPORT, THE PARTIES' INCOMES AND THE SUPPORT OBLIGATIONS OF THE APPELLANT, AND BY FAILING TO TAKE INTO CONSIDERATION AND GIVE THE APPELLANT, ROBERT J. KEATING, CREDIT FOR ALL TEMPORARY SUPPORT PAYMENTS MADE BY THE APPELLANT."
 {¶ 28} The second assignment of error challenges the trial court's determination of spousal support. Within this assignment, Robert also sets forth various creative but unsubstantiated arguments asserting that he should get credit toward his spousal support obligation for the temporary support payments he made.
 {¶ 29} Our review of the record reveals that Robert has failed to meet his burden with regard to demonstrating that the individual temporary spousal support and spousal support determinations of the trial court were in error. Robert has the burden of proving his contention that the combined amount ordered is too high given the length of the marriage and circumstances of the marriage. He must directly demonstrate that the trial court abused its discretion in each individual determination of temporary support and spousal support. *Page 12 
 Temporary Support {¶ 30} The magistrate set forth the following procedural history regarding the contentious issue of temporary support.
 {¶ 31} A temporary support order was issued on June 16, 2003, and made retroactive to March 6, 2003, the date plaintiff filed her complaint for legal separation. Robert was ordered to pay child support in the amount of $1,464.90 (plus 2%) and spousal support in the amount of $4,300.00 (plus 2%). Betty was to pay the mortgage, taxes, insurance, and utilities on the marital residence. Robert was to maintain health insurance coverage for the children and to pay 62.52% of any uncovered medical expenses.
 {¶ 32} Robert filed a motion for oral hearing under Civ. R. 75(N) on September 22, 2003. The basis for the motion was to "correct the Defendant's income utilized in calculating temporary child support and spousal support." The oral hearing commenced May 5, 2005, but did not conclude, and according to the docket was twice reset, first to October 20 and 21, 2005 and later to January 25 and 26, 2006. In the meantime, final hearing on the merits had commenced June 29, 2005. Accordingly, the temporary support issues were incorporated in the final hearing.
 {¶ 33} The income used for Robert in the temporary support order was $168,827. The Civ.R 75(N) hearing magistrate, an individual other than the final *Page 13 
hearing magistrate, had before him, among other things, the parties' joint tax returns. He also imputed $18,000 in income to plaintiff for purposes of the support calculation. Despite the fact that defendant's motion for oral hearing was predicated on the argument that the court used the wrong income for him, it is unclear what he believes the correct income should have been. The final hearing magistrate found the income used to be proper and supported by the evidence.
 {¶ 34} At final hearing, Robert submitted in evidence the transcript from the temporary support hearing held the afternoon of May 5, 2005. (Def.'s Exhibit NNN.) The Civ. R. 75(N) hearing did not conclude on May 5, 2005, and the court heard testimony only from Betty, who was called by Robert as if on cross-examination.
 {¶ 35} In Cangemi, the following was stated regarding the standard of review as to temporary spousal support awards:
 "There is no set formula under R.C. 3105.18 to guide courts to arrive at an appropriate amount of temporary support. The only explicit limitation in R.C. 3105.18(B) is that the award must be `reasonable.' Courts are given discretion in deciding what is reasonable support because that determination is dependent on the unique facts and circumstances of each case." Id. at ¶ 15. (Internal citations omitted.)
 {¶ 36} Given the facts and circumstances of this case, we find no abuse of discretion in the court's determination of the amount of temporary spousal support. Robert made no attempt to substantiate his claim that the temporary support *Page 14 
determination was in error. Beyond a bare assertion that the amount of monthly temporary support was too high, from the record, he does not demonstrate evidence of abuse of discretion in the determination as to the amount of temporary spousal support. He does not point to any error in the record, does not cite any authority or case law, nor does he submit any analysis as to why the temporary support award fashioned by the first magistrate constituted an abuse of discretion by the trial court. We therefore find no error in the trial court's initial determination of temporary support.
 Spousal Support Determination {¶ 37} Robert protests that the trial magistrate did not state any of the court's findings with regard to the fourteen factors set forth in the statute pertinent to spousal support, R.C. 3105.18(C)(1).
 "In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18(C)(1)(a)-(n). A trial court has broad discretion to examine all the evidence before it determines whether an award of spousal support is appropriate. A decision regarding spousal support will not be disturbed on appeal absent an abuse of that discretion." Cooper v. Cooper, Cuyahoga App. No. 86718, 2006-Ohio-4270, at ¶ 8.
 {¶ 38} Upon review of the magistrate's decision awarding Betty spousal support and the trial court's adoption of the award after modifying its term to 18 months from 24 months, we find the trial court satisfied the requirements to *Page 15 
provide its facts and reasons for determining spousal support as it did. Despite Robert's claims to the contrary, our examination of the record reveals that the trial court addressed each and every one of the fourteen factors pertinent to spousal support as set forth in R.C. 3105.18(C)(1), and made findings with regard to each factor.
 {¶ 39} Robert claims the factor regarding the duration of the marriage was not addressed. The magistrate stated, at page18, under the section titled "Spousal Support," that "[t]he duration of this marriage was 10 years as of the start of trial." In addition to considering the duration of the marriage, the trial court considered all the other factors, including the earning abilities of the parties and necessary living expenses.
 {¶ 40} We find Robert's claims that the trial court's findings are devoid of any explanation of the award and fail to refer to evidence presented at trial regarding the factors set forth in R.C. 3105.18(C)(1) to be totally unfounded. When analyzing the factors in R.C. 3105.18(C)(1), the magistrate noted the following: The evidence clearly establishes a marital contribution to defendant's education in the form of the repayment on a portion of the student loans necessary for the completion of Robert's medical education, and that Betty played a significant role in helping set up his medical practice. When Robert opened his office in January 2001, it is noted that in addition to being the primary caregiver to the couple's three children, Betty *Page 16 
worked both in the office and at home. The magistrate stated that Betty's substantial contribution in this area was an important factor to be considered. (Magistrate's Decision at 19-20.) See, also, R.C. 3105.18(C)(1)(b), (k), and (m).
 {¶ 41} It is clear from the record that the magistrate, as well as the trial court in its adoption of the magistrate's decision, despite Robert's unsupported assertions to the contrary, did in fact consider the factors as outlined in R.C. 3105.18(C)(1). Robert does not point to any deficiencies in the factual determinations except when he complains about the trial court's findings as to Betty's income as a factor to both temporary and spousal support determinations. When urging modification of the trial court's income determinations, Robert fails to cite authority as to why they should be reversed, but makes general assertions regarding the lack of credibility as to Betty's testimony regarding the issue of income. Our review of the record, however, reveals the presence of credible evidence supporting the magistrate's determinations, as adopted, as to the issues regarding Betty's income. This evidence is recited by the magistrate at pages 12, 13, and 14 of the magistrate's decision. As long as there is some credible evidence supporting the magistrate's decision, as adopted by the trial court, it will not be disturbed.
 {¶ 42} We find the trial court set forth its rationale with respect to its award of spousal support in great detail when addressing the required factors set forth in *Page 17 
the pertinent statute. We conclude that the trial court did not abuse its discretion and that the spousal support award was "appropriate and reasonable."
 Timing of the Temporary Support and Support Orders, Journalization of the Final Order, Purported Prevailing Rule, Delays
 {¶ 43} Interlaced in this assignment of error are various arguments that are indirect attempts to attack the amount and term of the spousal support awarded by the trial court. These include arguments regarding a "rule of thumb" purportedly included in unnamed legal decisions in this jurisdiction, the journalization date, and delays in the proceedings that are all attempts to have the amount of spousal support awarded by the trial court reduced. However, the difficulty with Robert's arguments is that they do not obviate the fact that he failed to demonstrate an abuse of discretion in the trial court's determinations as to the "duration of the marriage" and as to the amounts of temporary and spousal support.
 {¶ 44} Robert argues that the short delay in Betty's counsel submitting the proposed final decree to the court under local rule extended the time which he had to pay support; yet he fails to cite the number of extensions he requested in order to file objections and other filings, or the fact that the trial lasted over ten days because the parties' attorneys were often otherwise engaged in trial. *Page 18 
 {¶ 45} Related to his delay argument is his contention that the order of spousal support should be retroactively amended from October 1, 2007, to the date the court determined the marriage ended, June 29, 2005, because objections filed under Civ. R. 53 prolonged the time between these two dates. He cites no authority for this proposition and, pursuant to App. R. 16 (A)(7) and 12 (A)(2), we do not have to address it. Suffice it to state that the trial court in exercise of its equitable powers, despite the lack of any cited authority from Robert requiring it do so under the framework of the applicable Rules of Civil Procedure, considered the time that elapsed between Robert's filing of his own objections, preliminary objections, supplementary objections, and lastly, supplement to the supplemental objections filed six months after the original objections, and reduced the number of prospective months of spousal support payments by six months — from 24 months recommended by the magistrate to 18 months.
 {¶ 46} In reviewing an appeal from a trial court's order adopting a magistrate's decision under Civ. R. 53(E)(4), an appellate court must determine whether the trial court abused its discretion in adopting the decision, and any claim of trial court error had to be based on the actions of the trial court, not on the magistrate's findings or proposed decision. Berry v. Firis, 9th Dist. 05CA0109-M,2006-Ohio-4924. *Page 19 
 {¶ 47} We find no abuse of discretion in the trial court's utilization of the date of journalization as the effective date of the order. Until a trial court journalizes a final divorce decree, a party is obligated to pay temporary spousal support. See Baybutt v. Baybutt (2001), Franklin App. No. 00AP-413.
 {¶ 48} Finally, Robert contends within this assignment of error that he should get credit toward his temporary support obligations for the five months of mortgage payments he made at the rate of $2,476.20 per month in the amount of $12,381. A review of the record reveals that the requested credit was given to Robert by the magistrate's decision and was incorporated in the final divorce decree.
 {¶ 49} Robert's indirect attacks are merely general assertions of error without proof or citation to authority. They do not warrant reversal of the trial court.
 {¶ 50} The second assignment of error is overruled in its entirety.
 {¶ 51} The third and fourth assignments of error deal with issues of separate property interests and Munroe[1] calculations. As these assignments are closely related in facts and law, we will address them together.
 {¶ 52} ASSIGNMENT OF ERROR THREE
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO PROPERLY CONSIDER AND FAILING TO AWARD THE APPELLANT, ROBERT J. KEATING, HIS $12,000 SEPARATE PROPERTY INTEREST IN THE FORMER MARITAL RESIDENCE." *Page 20 
 {¶ 53} ASSIGNMENT OF ERROR FOUR
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY ADOPTING THE APPELLEE'S INCORRECT MONROE CALCULATION RELATING TO THE APPELLEE'S ALLEGED SEPARATE PROPERTY USED AS A DOWN PAYMENT ON THE PURCHASE OF THE FORMER MARITAL RESIDENCE."
 {¶ 54} Each party claimed a separate property interest in the down payment on the marital residence on Olde York Road. A portion of the down payment for the Olde York house derived from a second mortgage in the amount of $16,361 taken on Betty's Manorford Drive property. The trial court awarded this amount to her as premarital property in the overall division of property determination. It also granted her a fractional share of the passive appreciation on the property attributable to this separate investment as recognized inMunroe, also challenged by Robert herein.
 {¶ 55} The balance of the down payment on the marital residence in the amount of $12,000 was also in contention. Robert claimed that a check for $12,000 drawn on a First Nationwide Bank account on September 16, 1995, three months after the parties married in June of 1995, and nine months after the parties began living together, came from his personal funds accumulated before the marriage. The account on which this check was drawn was in the name of Robert J. Keating, *Page 21 
M.D. Robert was working with either the Paragon Medical Group or the Fairview Medical Group during this time period.
 {¶ 56} The magistrate determined, and the trial court agreed, that deposits into this account between July and September 1995 totaled over $25,000. The magistrate further determined, and the trial court also agreed, that Robert failed to rebut the presumption that the $12,000 withdrawal was comprised of marital funds. The trial court found that Robert failed to meet his burden of tracing the source of the $12,000 to his separate, premarital property.
 {¶ 57} The decision as to whether property is marital or separate is a mixed question of law and fact and is reviewed under the manifest weight of the evidence standard. Torres v. Torres, Cuyahoga App. Nos. 88582 and 88660, 2007-Ohio-4443, at ¶ 8.
 {¶ 58} In Ockunzzi v. Ockunzzi, Cuyahoga App. No. 86785,2006-Ohio-5741, in addressing a determination as to whether property was separate property or marital property, this court stated:
 "Pursuant to R.C. 3105.171(A)(3)(a)(i), `marital property' includes all real and personal property that is currently owned by either or both of the spouses and that was acquired by either or both of the spouses during the marriage. Property that is acquired during the marriage is presumed to be marital property unless it can be shown to be separate. On the other hand, `separate property' includes all real and personal property that was acquired by one spouse prior to the marriage. R.C. 3105.171(A)(6)(a)(ii). Such property remains separate property, even when it is commingled with other *Page 22 property, unless it is not traceable. R.C. 3105.171(A)(6)(b)." Id. at ¶ 17. (Internal citations omitted.)
 {¶ 59} A review of the record herein confirms that Robert failed to prove a separate interest in the $12,000, as the evidence clearly showed that the funds accumulated in the First Nationwide Bank account were deposits to the account made during the marriage. Since Robert failed to prove that the $12,000 was traceable solely to his premarital funds, he failed to prove a separate interest in these funds. There certainly was no reason for the trial court to conduct a Munroe calculation on what was determined to be marital rather than a separate interest.
 {¶ 60} With regard to Robert's fourth assignment of error challenging the Munroe calculation as to Betty's separate property interest, Robert does not address why the calculation of the magistrate was in error, nor does he present any alternative formula or calculation suggesting the correct calculation. He merely states that the trial court'sMunroe calculation regarding Betty's contribution of $16,360.53 plus appreciation through a Munroe calculation for a total of $24,863 awarded to her is in error. This contention is not precise and is presented without any reasoning whatsoever.
 {¶ 61} Appellate courts are not required to conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning.Village of Ottawa Hills v. Abdollah, Lucas App. No. L-04-1297,2006-Ohio-2618, citing State ex rel. Karmasu v. Tate (1992),83 Ohio App.3d 199, 206. We will not do so with *Page 23 
regard to Robert's unsupported claim that the trial court incorrectly calculated the Munroe calculation in its determination as to this particular separate property interest awarded to Betty.
 {¶ 62} Assignments of error three and four are unfounded and are overruled.
 {¶ 63} ASSIGNMENT OF ERROR FIVE
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO PROPERLY CONSIDER OR ALLOCATE THE INDEBTEDNESS ASSOCIATED WITH THE APPELLANT'S REAL ESTATE INTEREST IN THE COMMERCIAL PROPERTY LOCATED AT 18820 BAGLEY ROAD, SUITE 102, MIDDLEBURG HEIGHTS, OHIO 44130."
 {¶ 64} Robert argues in this assignment of error that the trial court erred by failing to take into account, and to deduct from Betty, a portion of the marital funds spent by Robert to reduce his separate debt to Dr. Rao and Dollar Bank on the Bagley-Oak property. Robert had argued that as of March 6, 2003, there was approximately $105,018 of negative equity in his interest in the property, represented by the appraised value of the property in the amount of $135,000, less the debts due and owing to Dr. Rao and Dollar Bank in the combined amount of $240,018. The trial court adopted the magistrate's rejection of Robert's position that he should be compensated dollar for dollar in the division of the debt associated with the Bagley-Oak property.
 {¶ 65} The magistrate accepted the uncontroverted testimony and report of Robert's expert witness, Daniel P. Forrester, who at trial stated that the value of *Page 24 
Robert's interest in the property was $135,000. The amount of debt on the property was not in dispute. The magistrate determined that the value of Robert's interest in the commercial property was likely to increase as a result of the payment of the debt on it and with the passage of time. The magistrate rejected the equal distribution of the debt on the Bagley-Oak property on the basis that Robert was able to deduct the monthly loan payments as well as its depreciation as a business expense. In response, Betty emphasized that not only did the magistrate not attribute the negative value of this particular asset to Robert, the magistrate did not attribute any value whatsoever to his one-sixth interest in the Bagley-Oak property. She also points out the magistrate, in part, based the selection of June 29, 2005, as the termination of the marriage date, in recognition that the indebtedness or negative equity in Robert's interest in the Bagley-Oak property had been reduced by Robert at that time. The balances on the two loans on the Bagley-Oak property at the start of final hearing on June 29, 2005, totaled $188,284, resulting in negative equity in the amount of $53,284 on the property.
 {¶ 66} This court stated in Larkey v. Larkey (Nov. 4, 1999), Cuyahoga App. No. 74765, "[w]hen reviewing the division of marital property and the allocation of marital debts, we are guided by an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348, 355." It was further stated that "any claimed disparity *Page 25 
in the allocation of the parties' debt must be viewed in light of the entire property division." Larkey at17, citing Snyder v. Snyder (1995),105 Ohio App.3d 69, 78.
 {¶ 67} In Torres this court stated:
 "R.C. 3105.171(F) sets forth the following factors for the trial court to consider in making a division of marital property:
 (1) The duration of the marriage; (2) The assets and liabilities of the spouses; (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage; (4) The liquidity of the property to be distributed; (5) The economic desirability of retaining intact an asset or an interest in an asset; (6) The tax consequences of the property division upon the respective awards to be made to each spouse; (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property; (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses; (9) Any other factor that the court expressly finds to be relevant and equitable.' Elliot v. Elliot, 4th Dist. No. 05CA2823, 2005-Ohio-5405.
 "Because the division of marital debt is `inextricably intertwined' with the division of marital property, we conclude that the same factors are relevant in fashioning an equitable distribution of marital debt. See Samples v. Samples, 4th Dist. No. 02CA21, 2002-Ohio-5441." Torres at ¶ 44, 45.
 {¶ 68} The Samples court stated that "[i]f, however, an equal division of marital property is inequitable, a court shall divide the property in the manner the court determines to be equitable." Id. at ¶ 11. In describing the broad discretion *Page 26 
given to the trial court in distribution of marital property, both assets and liabilities, it further stated:
 "[I]n fashioning a division of property a trial court may consider any factor it finds to be relevant and equitable. R.C. 3105.171(F)(9). Trial courts also possess broad discretion to fashion an equitable property division. Thus, absent an abuse of that discretion, appellate courts will not reverse trial court decisions in property division issues. We note that an abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. In applying the abuse of discretion standard, appellate courts are admonished that they must not substitute their judgment for that of the trial court. Indeed, to show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Id. at ¶ 25. (Internal citations omitted.)
 {¶ 69} We do not find that the trial court abused its discretion in not assigning negative equity to Robert in the property division. The magistrate determined that neither the negative value of the asset nor the outstanding debt for the purchase of this marital interest would be factored into the property division.
 {¶ 70} The magistrate clearly set forth reasons for making the determination that the outstanding debt for the purchase of Robert's interest in Bagley-Oak would not be factored into the property division. The property itself was being assigned a zero value in the overall property division given its tremendous *Page 27 
depreciation or loss in value. The magistrate reasoned that given this fact, Robert would not get credit in the property division for paying the portion of the debt on the property, which exceeded the property's value.
 {¶ 71} In the fashioning of an equitable division of property, the magistrate determined that Robert would benefit from this manner of accounting since the property's value most likely would increase with the passage of time, and Robert would also benefit from payment of the debt as he is able to deduct the monthly loan payments as well as depreciation of the building as a business expense through Robert J. Keating, M.D., Inc. Robert's accountant testified at trial that, in fact, the retained earnings of Robert J. Keating, M.D., Inc. resulted from the buildup of equity in the building caused by the paying down or reduction of the debt in the one-sixth property interest in the Bagley-Oak property. Given that the factors detailed in the trial court's decision regarding its accounting for the debt on the Bagley-Oak property are based on factors set forth in R.C. 3105.171 (F), we find no basis for concluding that the trial court abused its discretion in deciding it would not be equitable to make Betty accountable for half of the marital funds spent by Robert to reduce the balance of the Bagley-Oak property loans. The fifth assignment of error is overruled.
 {¶ 72} ASSIGNMENT OF ERROR SIX
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY IMPROPERLY CONSIDERING AND DOUBLE COUNTING, *Page 28 FOR PURPOSES OF PROPERTY DIVISION, A CAPITAL ACCOUNT RELATING TO THE APPELLANT, ROBERT J. KEATING'S BUSINESS INTEREST."
 {¶ 73} The trial court approved the magistrate's finding that Robert had a capital account as a partner in the Bagley-Oak property. The trial court found that the balance in the account as of 2004 was $20,241 and included it as an asset in the property division awarded to Robert. Robert contends that the magistrate "double counted" this account as an asset and was inconsistent when it also awarded him his entire interest in his medical practice ($140,000) in addition to his partnership interest in Bagley-Oak, which the trial magistrate valued at zero for purposes of property division, as previously discussed herein with regard to his fourth assignment of error.
 {¶ 74} We do not find any "double counting" of this account asset when the trial court did not assign negative equity in the Bagley-Oak property to Robert. Arguably, double counting could only have affected Robert if the magistrate had assigned negative equity. Instead, for reasons articulated in the magistrate's detailed decision, and previously discussed, no negative equity in the Bagley-Oak property was assigned to Robert.
 {¶ 75} Additionally, Robert contends that the trial court included the capital account in its determination of the figure attributed to Robert's medical practice *Page 29 
and partnership ($140,000). However, he makes this bare assertion without any support from the record.
 {¶ 76} In the magistrate's decision at page 15, Robert was awarded his medical practice stipulated by the parties to be valued at $140,000. Robert was also awarded the Bagley-Oaks' capital account valued at $20,241. Both of these items were awarded to Robert by the trial court as separate items of property. If the value of the capital account was also included in the value of the medical practice in error, Robert effectively precluded any possibility of proving any such claim of "double counting" with regard to valuation to the medical practice having stipulated to its value. Once the value of the medical practice was agreed to by the parties, the magistrate did not have to address the composition of assets comprising the value of the medical practice because the task was taken away from the trial court by the parties' stipulation.
 {¶ 77} Again, although we addressed this assignment of error, we note that Robert failed to cite any authority or case law regarding his assertions of "double counting." As stated previously, we are not required to conjure up questions never squarely asked or construct full-blown claims from convoluted reasoning. Village of OttawaHills, supra.
ASSIGNMENT OF ERROR SEVEN *Page 30 
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS DETERMINATION OF CHILD SUPPORT BY FAILING TO TAKE INTO CONSIDERATION ANY DEVIATION FACTORS SET FORTH IN OHIO REVISED CODE 3119 ET SEQ.; AND BY AWARDING ALL THREE (3) TAX DEPENDENCY EXEMPTIONS TO THE APPELLEE."
 {¶ 78} In his seventh assignment of error, Robert challenges the trial court's order that he pay $1,431.76, plus 2% processing fee, for the support of the three minor children, amounting to $477.25 per child. Specifically, he contends that the trial court abused its discretion in failing to deviate from child support guidelines set forth in R.C. 3119.23. He submits instead that he should pay a total of $780.75 per month, including the 2% processing fee for the support of the three minor children.
 {¶ 79} At the outset, we recognize that a trial court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion. Pauly v. Pauly, 80 Ohio St.3d 386, 390,1997-Ohio-105.
 {¶ 80} In arguing that the trial court improperly failed to deviate from child support guidelines set forth in R.C. 3119.23, Robert fails to acknowledge the clear legislative directive set forth in R.C. 3119.04. *Page 31 
 {¶ 81} R.C. 3119.04 provides guidance as to examination of the issue of child support where combined income of the parties exceeds $150,000.
 {¶ 82} With regard to this assignment of error, Robert agrees that the trial court correctly imputed income to Betty for a child support determination. Furthermore, he does not argue that the combined annual income, the basis for the child support order, is other than $191,235. (Line 15 of the child support worksheet attached to the magistrate's decision and trial court's final decree.) Yet, he submits that the trial court failed to deviate downward from the rebuttable guidelines of child support of R.C. 3119.22, by considering factors authorizing deviation as set forth in R.C. 3119.23. Then, taking another tact, he contends without demonstration that the trial court erred in its "upward deviation" from the "appropriate" amount of support without setting forth any specific findings to support the award, "as required by R.C. 3119, et seq."
 {¶ 83} This court explained in Cyr v. Cyr, Cuyahoga App. No. 84255,2005-Ohio-504, that child support guideline calculations for families where the parents' combined income exceeds $150,000 are not available by statute. This is because of the fact that the child support guideline worksheet and the basic child support guideline schedule set forth in R.C. 3119.02, do not address circumstances in which combined parental income is over $150,000. R.C. 3119.04(B), the statute which pertains to situations in which the combined income is above $150,000, states: *Page 32 
 "If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings."
 {¶ 84} This court has consistently held that in determining child support obligations pursuant to R.C. 3119.04, trial courts must proceed on a case-by-case basis and generally do not have to state reasons for doing so. "[T]he statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000." Cyr at 25. See, also, Pruit v. Pruit, Cuyahoga App. No. 84335, 2005-Ohio-4424; Seibert v. Tavarez, Cuyahoga App. No. 88310, 2007-Ohio-2643.
 "Ohio courts have interpreted R.C. 3119.04(B) as giving trial courts discretion in determining child support amounts on a case-by-case basis based on their assessment of the needs and standard of living of the children. `[W]hen the income of the parents is greater than $150,000, the appropriate standard for the amount of child support is `that amount necessary to maintain for the children the standard of living they would have enjoyed had the marriage continued." Freeman v. *Page 33 Freeman, Wayne County App. No. 07CA0036, 2007-Ohio-6400. (Internal citations omitted.)
 {¶ 85} Our review of the magistrate's decision, as adopted by the trial court, reveals that the trial court assessed "the needs and standard of living of the children" as required by R.C. 3119.04(B), when it stated "it would be in the best interest of the children to provide for a comparable level of income in both households." The trial court is not required to set forth any specific findings to support its child support determination despite Robert's misstatements of law to the contrary. Robert has not shown that the trial court's award of child support was an abuse of discretion.
 Tax Dependency Exemptions {¶ 86} Another issue raised by Robert under the seventh assignment of error is the trial court's alleged error in awarding Betty all three tax dependency exemptions for the three minor children. Robert argues that awarding him the exemptions would be in the children's best interest. He contends that since he is in a higher tax bracket the exemptions would yield a better "net tax savings" for him and the children. Betty claims that awarding the exemptions to her was proper as she would reap the highest net tax savings of such credit, furthering the stated best interest of the children.
 {¶ 87} Allocation of tax exemptions between parents by a trial court is not disturbed unless a reviewing court finds that the trial court abused its discretion in *Page 34 
doing so. Eickelberger v. Eickelberger (1994), 93 Ohio App.3d 221,225-26; see, also, Ankney v. Bonos, Summit App. No. 23178,2006-Ohio-6009.
 {¶ 88} The trial court in ruling on Robert's objections to the magistrate's decision as to the allocation of the tax exemptions stated:
 "As to the dependency exemptions, the court finds that defendant presented no evidence at trial on the issues of the exemptions. The court has considered the factors set forth in O.R.C. 3119.82, particularly the fact that plaintiff will have to pay taxes on the spousal support awarded to her and the fact that plaintiff can fully benefit from the under 17-child tax credit whereas defendant cannot. The court concludes that the award of the exemptions to plaintiff is in the best interest of the children."
 {¶ 89} This ruling was reflected in the final decree of divorce.
 {¶ 90} The court in Foster v. Foster, 2004-Ohio-3905, citing the above statute, noted: "[w]hile all of the above factors must be considered and individually weighed, the crux of the issue is the best interest of the child." Id. at ¶ 22.
 {¶ 91} Both the decision of the magistrate, and the final determinations of the trial court regarding the dependency exemption issue, demonstrate that the court considered the factors of the statute and the paramount and overriding consideration — the best interests of the children. The trial court keenly observed that Robert presented no evidence at trial on the issues of exemptions. Without evidence presented by Robert as to the tax dependency issue during the ten-day trial, any attempt by the trial court to reconsider the tax consequences of the *Page 35 
dependency exemptions awarded to Betty and to modify or overrule the magistrate's decision, which acknowledged the overriding, determinative best-interests-of-the-children standard in deciding the dependency tax exemption issue, "would be speculative and without evidentiary support."
 {¶ 92} Robert's seventh assignment of error is overruled.
 {¶ 93} ASSIGNMENT OF ERROR EIGHT
"THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ITS OVERALLDIVISION OF PROPERTY."
 {¶ 94} In his eighth assignment of error, Robert argues that the trial court abused its discretion by not dividing the parties marital property equitably.
 {¶ 95} R.C. 3105.171(B) mandates equitable distribution of marital and separate property. The Ohio Supreme Court summarized our standard of review in marital property division in Holcomb v. Holcomb,44 Ohio St.3d 128, as follows:
 "The trial court is vested with broad discretion in determining the appropriate scope of these property awards. Although its discretion is not unlimited, it has authority to do what is equitable. A reviewing court should measure the trial court's adherence to the test, but should not substitute its judgment for that of the trier of fact unless, considering the totality of the circumstances, it finds that the court abused its discretion. `The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217, 219, * * *." Id. at 130. (Internal citations omitted.) *Page 36 
 {¶ 96} Unequal division of property by itself does not constitute an abuse of discretion. Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94. A division does not have to be equal to be equitable. Cherry, supra.
 {¶ 97} Mindful of these standards, we review Robert's arguments concerning the property division subsumed in assignment of error number eight.
 Household Items and Furnishings and Landscaping Rocks {¶ 98} The trial court adopted the magistrate's recommendation that each party retain any household goods and furnishings presently in his or her possession, free and clear of any claim on the part of the other.
 {¶ 99} Robert contends that the trial court improperly awarded all of the personal property and household furnishings contained within the marital home, as well as landscaping rocks placed on the premises, to Betty. Betty argues that this was equitable because the trial court awarded the personal property Robert had purchased for both his Bagley Road and Arrowhead Trail properties to him. These items were also purchased during the marriage and, like the household items at the marital residence, were subject to marital division.
 {¶ 100} In Mukhopadhyay v. Mookerjee (Oct. 16, 1997), Cuyahoga App. No. 71130, this court recognized the difficulty for a trial court in valuing every piece of household furnishing accumulated over years of marriage, and while acknowledging the better practice under R.C. 3105.171 is to "expressly designate *Page 37 
the recipient of each disputed item of personal property," we approved a trial court's roughly equal distribution of household items and furnishings in a similar fashion to the case sub judice.
 {¶ 101} In Mukhopadhyay, each party retained the household items they had been using during the period they were separated. In a fashion similar to the trial court in Mukhopadhyay, the trial court expressly found that Robert purchased household furnishings for his separate residences, which he was to retain, and Betty was to retain those furnishings, household items, and landscaping rocks located at the marital residence. In distribution, the magistrate took pains to consider the factors set forth in R.C. 3105.171(F), including the following: liquidity of the property, economic desirability of retaining intact an asset, costs of sale, and "any other factor that the court expressly finds to be relevant and equitable." The other factor considered by the trial court herein was the needlessly disruptive nature of removal of household items, furnishings, and landscaping rocks from the marital residence. We do not find that the trial court abused its discretion in its distribution.
 Personal Seat Licenses {¶ 102} The trial magistrate determined the following regarding two Permanent Seat Licenses (PSLs) for the Cleveland Browns. *Page 38 
 {¶ 103} The parties hold two PSLs for Cleveland Browns games. Robert has had use of them since the separation. They cost between $1,200 and $1,500 per year. Betty requested that she either be given one of the licenses or one-half of the tickets. The magistrate found that the parties should each pay one-half the costs of the licenses each year and split the tickets equally. Beginning with a choice by Betty, the parties will alternate in selecting what games to attend.
 {¶ 104} Robert points to one section in Betty's closing argument as demonstrating no desire on her part to possess this particular marital asset. He fails to mention that in another section of the closing argument, she lists it as a marital asset for distribution. The trial judge, realizing that a misstatement in a closing argument is not a stipulation, stated the following in ruling on Robert's objection regarding the PSLs:
 "As to Permanent Seat Licenses (PSLs), the Court finds that the licenses are a marital asset having been purchased during the marriage. The record does not contain any evidence of the present value of the licenses. However, Plaintiff in her Closing Argument proposed that they be awarded to Defendant at a value of $1,500.00. In the interest of severing the parties' financial interest in this asset, the court finds that Defendant shall retain the licenses and pay Plaintiff the sum of $750.00 as and for her share."
 {¶ 105} This ruling is mirrored in the final decree in which the trial court ordered retention of the PSLs by Robert, with Robert paying Betty $750 for her share of the licenses. *Page 39 
 {¶ 106} Robert argues the trial court erred in finding that the PSLs were marital assets. He is not disputing the value of the seats. The characterization of the parties' property in a divorce proceeding as marital or nonmarital is a factual inquiry, and the trial court's determination will not be reversed if supported by some competent, credible evidence. Barkley v. Barkley (1997), 119 Ohio App.3d 155, 159.
 {¶ 107} Upon review of the record, we find competent, credible evidence to support the trial court's decision as to the PSLs being marital property. The record indicates the PSLs were purchased after the date of marriage and that the season tickets must be repurchased each year. Because there is evidence in the record that the PSLs were purchased with marital assets, we find no merit to Robert's argument.
 Third Federal Account Funds {¶ 108} Lastly, Robert assigns as error the trial court's disposition regarding Third Federal Funds in the amount of $1,341.41, which the magistrate found were withdrawn by Robert in January of 2003, and should be allocated to him in the property division. The trial court summarily overruled Robert's objection, and adopted the magistrate's decision.
 {¶ 109} The record reflects that the withdrawal from the account did occur (Plaintiffs Exhibit 29), and the funds were deposited into Robert's new solely *Page 40 
owned account (Plaintiff's Exhibit 65). We find no reason to reverse the trial court's judgment that a bank account containing income accumulated during the marriage was marital property and should be allocated to his distributive share of the assets.
 Fifth Third Account Funds {¶ 110} Robert makes a cursory statement in his argument under assignment of error eight referring to the trial court's error as to Fifth Third account to the effect that the purported error with regard to the bank account is compounded by the fact that Betty was awarded the entire tax refund amount creating a windfall for her. We will not address this reference as an assignment of error given it is only raised in reference to the Fifth Third account. Robert provides no separate argument accompanying this reference. Robert simply makes the reference without further explanation or reasoning.
 {¶ 111} This court stated in Cireddu v. Cireddu (Sept. 7, 2000), Cuyahoga App. No. 76784:
 "An appellate court is empowered to disregard an assignment of error presented for review due to a lack of briefing by the party presenting that assignment. Proper appellate briefing standards are set forth in App. R. 16(A). This assignment is deemed to be improperly briefed, and hence disregarded, due to the complete lack of argument containing reasons in support of the contention and citations to authority." (Internal citations omitted.) Id. at 24. *Page 41 
 {¶ 112} Furthermore, this purported error was not included in any of Robert's objections and, therefore, pursuant to Civ. R. 53(E)(3)(b), is deemed waived.
 {¶ 113} The eighth assignment of error is overruled in its entirety.
ASSIGNMENT OF ERROR NINE
 "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY AWARDING THE APPELLEE ATTORNEY FEES AS ADDITIONAL SPOUSAL SUPPORT."
 {¶ 114} We review a trial court's decision regarding attorney's fees for an abuse of discretion. Packard v. Mayer-Packard, Cuyahoga App. No. 85189, 2005-Ohio-4392. The controlling statute regarding award of attorney's fees, R.C. 3105.73(B), provides as follows:
 "In any post-decree motion or proceeding that arises out of an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that motion or proceeding, the court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets."
 {¶ 115} Our review of the record does not reveal an abuse of discretion in the trial court's decision regarding an award of attorney's fees of $16,000 to Betty. The court weighed the equities involved and considered various factors set forth in the above-captioned statute, including the disparity in the parties' income, and *Page 42 
determined it was reasonable to award Betty a small portion of her attorney's fees. We find the award of attorney's fees to Betty was equitable and within the parameters of the broad discretion granted the court by the legislature. The ninth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P. J., and PATRICIA A. BLACKMON, J., CONCUR
[1] Munroe v. Munroe (1997), 119 Ohio App.3d 530. *Page 1