[Cite as *In re Estate of Luoma*, 2013-Ohio-148.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

ESTATE OF                     :        **O P I N I O N**
ROBERT M. LUOMA, DECEASED

                                      :

                                      **CASE NO. 2012-L-046**

Civil Appeal from the Lake County Court of Common Pleas, Probate Division, Case No. 09 ES 0063.

Judgment: Affirmed.

*J. Alex Morton*, 5247 Wilson Mills Road, Suite 334, Richmond Heights, OH 44143 (For Appellant, Jonathan C. Luoma).

*Jay F. Crook*, Shryock, Crook & Associates, LLP, 30601 Euclid Avenue, Wickliffe, OH 44092 (For Appellee, Robert D. Luoma).

*Gina M. Bevack-Ciani*, Thrasher, Dinsmore & Dolan, 100 Seventh Avenue, Suite 150, Chardon, OH 44024-1079 (For Appellee, Matthew N. Luoma).

*Anthony J. Aveni*, Cannon, Aveni & Malchesky Co., L.P.A., 41 East Erie Street, Painesville, OH 44077 (Administrator of the Estate of Robert M. Luoma).

MARY JANE TRAPP, J.

{¶1} Jonathan C. Luoma appeals from a judgment of the Probate Division of the Lake County Court of Common Pleas, which denied his Motion for Forfeiture pursuant to R.C. 2701.10(A). He sought to have the probate court find that his brother,

Matthew Luoma, had forfeited his share of their father's estate because Matthew had failed to probate the will within three years of the elder Luoma's death. Both Matthew and Jonathan presented evidence to a magistrate, and a review of the evidence reveals that Jonathan was unable to establish all the elements required by the forfeiture statute. Specifically, Jonathan failed to establish that Matthew (a) had the power to control the will during the three-year period contemplated by the statute, and (b) did not have reasonable cause for his failure to probate the will. Because we find the probate court's decision is supported by both the evidence and the law of forfeiture, we affirm the decision of the Lake County Court of Common Pleas, Probate Division.

### Substantive Facts and Procedural History

{¶2} Robert M. Luoma ("Mr. Luoma"), a resident of Rockport, Massachusetts, died on December 7, 2005. He was survived by three sons: Jonathan C. Luoma, of Maine, Matthew N. Luoma, of California, and Robert D. Luoma, of Ohio. Mr. Luoma's most valuable asset was a house in Fairport Harbor, Lake County. In his will, he bequeathed 50 percent of the interest in the house to Robert and 25 percent each to Jonathan and Matthew. The three brothers were to share the residue of his estate equally.

{¶3} After Mr. Luoma died, the brothers met at his apartment in Massachusetts to divide minor household items he owned. As for his 1998 Toyota Corolla, the brothers agreed Robert should drive it to Ohio, sell it, and divide the proceeds among the brothers. Robert sold the car in Ohio for $4,000, but used the funds to repair the Fairport Harbor house that had been cited by the city for its deteriorating condition.

2

{¶4} Matthew was named the executor in Mr. Luoma's will and Jonathan the alternate executor. Matthew, however, did not offer his father's will for probate in Massachusetts, apparently believing it was unnecessary because his father only owned nominal property in Massachusetts. The Fairport Harbor house, valued at $67,000, was rented for a short period of time to tenants after his father moved to Massachusetts.

{¶5} On February 6, 2009, Jonathan filed an ancillary administration in Ohio and asked the court to appoint him as the executor. The court denied the request and Jonathan appealed to this court, in Lake County Appeal Case Number 2009-L-123. This court subsequently dismissed the appeal upon the parties' request, after the parties agreed to have the trial court appoint a third party, Anthony J. Aveni, Esq., as the Administrator, WWA, of the estate.

{¶6} On February 11, 2010, Mr. Aveni filed the Inventory and Appraisal (the "Inventory") of the estate. The only property listed on the inventory was the Fairport Harbor real property. Jonathan filed "Exceptions to Inventory and Appraisal," alleging the inventory failed to include rental income from the Fairport Harbor house, its furnishings, and the Toyota Corolla.

{¶7} A hearing on the exceptions was held before a magistrate, who issued a decision recommending that the trial court deny the exceptions. Jonathan filed objections to the magistrate's decision. The probate court held a hearing on Jonathan's objections and overruled them; Jonathan appealed the matter in *Estate of Luoma*, 11th Dist. No. 2011-L-006, 2011-Ohio-4701. We affirmed the decision of the probate court.

{¶8} In addition to the Exceptions to Inventory and Appraisal, Jonathan also filed a Motion for Forfeiture, claiming Matthew's interest in the estate should be forfeited

3

because Matthew failed to offer Mr. Luoma's will for probate and neglected his duty as the executor. The magistrate conducted a hearing, and issued her decision recommending the probate court overrule the motion for forfeiture. The magistrate specifically found Matthew's testimony credible, stating that "Matthew believed he administered his father's estate, as executor, by distributing the assets in the bank equally between the brothers and dividing the personal, tangible property. Matthew derived no benefit from not offering the Will for probate. Further, Matthew's brothers were not harmed by failing to probate the Will. Whether the real property may have been sold for more money immediately after decedent's death is speculative."

{¶9} On the other hand, the magistrate found Jonathan's testimony not credible. She stated that "Jonathan, according to his testimony, advised Matthew to probate the Will; however, Jonathan's knowledge of probate stops [sic] did not extend to his ability to serve as executor, although named as the alternate executor in decedent's Will. Jonathan's testimony regarding whether he was aware he could offer the Will for probate is not consistent. Further, Jonathan did not offer the Will to probate for over three years. Jonathan had the same copy of the Will that Matthew had. Further, he had the same ability to control a copy of the Will. Jonathan is the only brother who knew, in late 2009, that the original Will is located in the Massachusetts attorney's office."

{¶10} Jonathan filed objections to the magistrate's decision, which the probate court stayed pending the outcome of the Inventory appeal. After this court affirmed the probate court's decision regarding the Inventory, the judge then conducted an independent review of the record in order to rule on Jonathan's latest objections.

4

{¶11} In its judgment entry on the magistrate's decision to overrule the motion for forfeiture, the probate court found the decision well taken in part. Without any further explanation, the probate court modified the magistrate's decision to reflect that Matthew "never had the power to control the Will." Otherwise, the probate court adopted the magistrate's decision in its entirety.

{¶12} Jonathan timely appealed and now brings the following assignments of error:

{¶13} "[1.] The Probate Court erred by interpreting R.C. 2107.10(A) to require that a beneficiary's withholding or neglect or concealment or refusal to cause it (the will) to be offered for probate must be intentional and without reasonable cause, for the purpose of delaying its administration or defeating some rights or benefits given by the terms of the will."

{¶14} "[2.] The Probate Court erred by incorrectly applying R.C. 2107.10(A) to the facts of this case and concluding that Matthew never had the power to control the Decedent's Will."

## Whether Forfeiture Statute Requires an Intentional Act Without Reasonable Cause

{¶15} In his first assignment of error, Jonathan argues that the probate court misconstrued the law of forfeiture, and engrafted a "specific" intent requirement onto the forfeiture statute. He suggests that the magistrate incorrectly relied on *In re Kusar*, 5 Ohio Misc. 23 (1965), as it is not binding authority upon the probate court. We find no error in the probate court's interpretation of the forfeiture statute and overrule Jonathan's first assignment of error.

## Standard of Review

{¶16} "On appeal, a trial court's adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion in adopting the decision." *Brown v. Gabram*, 11th Dist. No. 2004-G-2605, 2005-Ohio-6416, ¶11, citing *Lovas v. Mullett*, 11th Dist. No. 2000-G-2289, 2001 Ohio App. LEXIS 2951, *5-6 (July 29, 2001). As this court recently stated, the term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). The Second Appellate District also recently adopted a similar definition of the abuse-of-discretion standard: an abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting Black's Law Dictionary (8 Ed.Rev.2004) 11. When an appellate court reviews a pure issue of law, "the mere fact that the reviewing court would decide the issue differently is enough to find error (of course, not all errors are reversible. Some are harmless; others are not preserved for appellate review). By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error." *Id.* at ¶67.

### Requirements of R.C. 2107.10(A)-Knowledge, Power to Control and Intent Without Reasonable Cause

{¶17} This case centers around the interpretation and applicability of R.C. 2107.10(A), which provided that: "No property or right, testate or intestate, shall pass to a beneficiary named in a will who knows of the existence of the will for three years and has the power to control it, and, without reasonable cause, intentionally conceals or withholds it or neglects or refused within the three years to cause it to be offered for or

6

admitted to probate. The estate devised to such devisee shall descend to the heirs of the testator, not including any heir who has concealed or withheld the will."[1]

**{¶18}** Scant case law exists as related to this statute, but the most recent interpretation states that "Revised Code § 2107.10(A) provides a penalty for intentionally withholding a will, without just cause * * *." *Boczkiewicz v. Gallagher*, 8th Dist. No. 87251, 2006-Ohio-4289, ¶21. We are unable to locate any binding authority interpreting R.C. 2107.10(A), and Jonathan has provided us with no such authority. *Kusar*, however, while not binding authority, provides insightful guidance: "Being a penalty statute and thus requiring a strict construction, it then becomes necessary to show that any of the children sought to be brought under the forfeiture provisions, in addition to having known about the will for more than three years after the death of the testatrix, must have had the power to control the will and must not have had reasonable cause to withhold it or to neglect to probate it." *Kusar* at 30.

**{¶19}** The probate judge in *Kusar* begins his analysis with the decision in *Hoskins, Admrx., v. Lentz*, 23 Ohio Law Abs. 5 (1936), which "best expressed" the pertinent rule of law announced in two earlier decisions, namely, that a beneficiary who fails to offer a will for probate within the statutory three-year period is "not deprived of his legacy or devise unless his withholding or neglect or concealment or refusal to cause it to be offered for probate is intentional and without reasonable cause, for the purpose of delaying its administration or deferring some rights or benefits given by the terms of the will." *Kusar* at 29. We, too, find from a plain reading of the statute that the word "intentionally" modifies the verbs "conceals," "withholds," "neglects," and "refuses."

---

1. R.C. 2107.10(A) has since been amended to a one year requirement instead of the three years permitted at the time this case originated.

Jonathan's assertion that the statute is worded in the "disjunctive," that is, the adverb "intentionally" only modifies the verbs "conceals" and "withholds," but does not modify the verb "neglects," thus setting both a negligence and a specific intent standard, is tortured and incorrect.

{¶20} Further, while Jonathan argues that the statute must be read in the disjunctive, to allow for forfeiture as a result of *either* intentional concealment *or* neglect, he fails to recognize that either standard still requires a lack of reasonable cause to trigger forfeiture. The individual facing forfeiture must also have the power to control the will in order for such a penalty to be imposed. A review of the record reveals that Matthew demonstrated that he had reasonable cause not to probate the will, and that he did not have the power to control the will. We address the question of Matthew's power to control the will in the second assignment error.

{¶21} The magistrate specifically found Matthew's testimony as to why he did not offer the will for probate credible. He believed he had fulfilled his duty as executor by distributing Mr. Luoma's bank assets and personal property. He did not think he needed to probate the will, either in Massachusetts or Ohio, because it only disposed of the Fairport Harbor house, and there was already an agreement between the three brothers as to the house. We must defer to the finder of fact, the magistrate in this case, as to whether Matthew proffered a credible explanation for his failure to offer the will for probate. The magistrate found that Matthew had reasonable cause for failing to probate the will, and thus he does not meet the statutory requirements of R.C. 2107.10(A) for the imposition of forfeiture.

**{¶22}** A review of this record reveals that the magistrate's findings were supported by competent and credible evidence, and the probate court did not abuse its discretion in adopting such findings after an independent review of the record. We find no error by the magistrate or the probate court in looking to *Kusar* for persuasive guidance when little case law exists on the subject matter, and no binding authority can be located. Assignment of error one is without merit.

### Whether Matthew Controlled the Will

**{¶23}** In his second assignment of error, Jonathan argues that the trial court erred when it modified the magistrate's decision to include a finding that Matthew never controlled the will. Jonathan provides no case law or other authority in support of his argument regarding the power to control the will. We note that "a party asserting error in the trial court bears the burden to demonstrate error by reference to matters made part of the record in the court of appeals." *Concord Twp. Trustees v. Hazelwood Builders*, 11th Dist. No. 2000-L-040, 2001 Ohio App. LEXIS 1383, *6 (Mar. 23, 2001), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197 (1960). "'An appellate court is empowered to disregard an assignment of error presented for review due to a lack of briefing by the party presenting that assignment. Proper appellate briefing standards are set forth in App.R. 16(A).'" *Pearlstein v. Pearlstein*, 11th Dist. No. 2008-G-2837, 2009-Ohio-2191, ¶81, quoting *Keating v. Keating*, 8th Dist. No. 90611, 2008-Ohio-5345, ¶111, quoting *Cireddu v. Cireddu*, 8th Dist. No. 76784, 2000 Ohio App. LEXIS 4076 (Sept. 7, 2000). If assignments are not properly briefed, "they should be disregarded 'due to the complete lack of argument containing reasons in support of the contention and citations to authority.'" *Id.*, quoting *Keating* at ¶111, quoting *Cireddu* at *24. We

9

choose, however, to dispose of this assignment of error on the merits. Although the probate court offered no further explanation for its modification, we find no error because the evidence supports the probate court's conclusion.

{¶24} Initially, we note that this assignment is rendered moot by our holding above that Matthew provided reasonable cause for his failure to probate the will. Given that a probate court must find that the individual facing forfeiture had the power to control the will during the three-year period following a decedent's death *and* that the individual lacked reasonable cause for his failure to probate the will, Matthew has already defeated Jonathan's motion for forfeiture by proffering a credible and reasonable explanation for his failure. We will, however, review the assignment of error on the merits so as to fully address Jonathan's concerns.

{¶25} Jonathan argues that the probate court erred in modifying the magistrate's decision to reflect that Matthew never had the power to the control the will. However, the record reveals that Matthew did not, in fact, have possession of the will. The evidence established that the will was in Attorney Visnick's Massachusetts office ever since Mr. Luoma's death. Matthew testified that he made copies of the will just after his father's death and distributed copies to Jonathan and Robert; therefore, all three brothers were aware of the will's existence and contents, and, specifically, Jonathan was aware that he had been named as alternate executor of the estate. Furthermore, Jonathan discovered in 2009 that the original will was in Attorney Visnick's office, and acknowledged during the hearing that he had the power to probate the will if Matthew failed to do so. Thus, it is clear that both Matthew and Jonathan each had the power to take action and present a copy of the will for probate. No evidence is present in the

10

record to demonstrate that Matthew ever had possession of the will, nor that he ever had power to control the attorney's possession of the will.

{¶26} Further, Jonathan, in fact, had the power to compel the production of the original will for probate because he knew its location, but never did so. Therefore, it cannot be said that Matthew had exclusive control of the will; they both had the same power to control the Will. The record is replete with evidentiary support for this finding. We, therefore, find no error in the probate court's modification upon independent review of the record; the second assignment of error is without merit.


TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.

11